# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| TAYLOR CORPORATION, | | |
| | Plaintiff, | Civil No. 22-1151 (JRT/TNL) |
| v. | | |
| XL INSURANCE AMERICA, INC., WESTPORT INSURANCE CORP., and LIBERTY MUTUAL FIRE INSURANCE CO., | | **MEMORANDUM OPINION AND ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |
| | Defendants. | |

Amran Farah, Jeanette M. Bazis, Mark L. Johnson, and Sybil L. Dunlop, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for Plaintiff.

Daniel J. Millea and Laura W. Bartlow, **ZELLE LLP**, 500 Washington Avenue South, Suite 4000, Minneapolis, MN 55415, for Defendants.

This is an insurance coverage dispute arising out of damage to concrete press pads in a printing facility leased by Plaintiff Taylor Corporation's ("Taylor") subsidiary Curtis 1000, Inc. ("Curtis"). Taylor uses highly specialized printing presses that required the installation of concrete press pads to support proper functioning. Upon attempting to install the printing presses in January of 2019, Taylor discovered that the press pads had settled and cracked—allegedly due to subsidence of the soil beneath the building—rendering the press pads unsuitable for their intended purpose.

Taylor now seeks coverage for its losses caused by the damaged press pads under nearly identical insurance policies (the "Policies") issued by Defendants XL Insurance America, Inc.; Westport Insurance Company; and Liberty Mutual Fire Insurance Company. The parties filed cross motions for summary judgment on the single issue of whether earth movement caused in part by faulty workmanship and/or settling would be covered by the Policies' earth movement coverage extension, or if it would be excluded under the Policies' faulty workmanship and settling exclusions. Because the Policies use traditional anti-concurrent causation language in a fashion that does not clearly evidence the parties' intent to create an anti-concurrent causation clause, the Policies' earth movement coverage extension is ambiguous. The Court will therefore construe the Policies in favor of Taylor and grant its motion for partial summary judgment.

## BACKGROUND

### I.   FACTUAL BACKGROUND

#### A.   Press Pad Failure

Curtis is a wholly owned subsidiary of Taylor. (Compl. ¶ 11, May 2, 2022, Docket No. 1.)[1]   Curtis contracted with a developer to lease a "build-to-suit" printing facility in Fridley, Minnesota (the "Fridley Facility"). (Id.)  The Fridley Facility was built with "several specially reinforced, isolated equipment pads" meant to support integral printing press

---

[1] The only declaration Taylor has provided is copies of the Policies. The facts pertinent to this cross motion for partial summary judgment are largely undisputed, however. Thus, the Court will cite either to the Plaintiff's complaint and declaration or the Defendants' declarations where factual support is contained therein.

equipment ("Press Pads").  (*Id.*)  In particular, the Press Pads were designed and built to support the Plaintiff's Heidelberg presses.  (Decl. of Laura W. Bartlow ("Bartlow Decl."), Ex. 3, at 53–54, Dec. 1, 2022, Docket No. 38.)

Taylor attempted to install a Heidelberg press on one of the Press Pads in January of 2019 but was unable to because the Press Pad had moved, preventing the Heidelberg press from being level.  (Compl. ¶ 12, May 2, 2022, Docket No. 1.)  The Press Pads had settled and cracked, rendering them "unsuitable for their intended purpose."  (*Id.* at ¶ 16.)  Taylor hired a geo-technical engineering firm to analyze the issue, which concluded that the soil beneath the building was non-uniform in its density, would thus experience "differential settlement" from the force applied by operation of the printing press, and therefore was "not suitable for support of the printing press foundations."  (Bartlow Decl. Ex. 7, at 138.)  Taylor had to remove the Press Pads and replace them with similar pads installed to bedrock to be able to use the Fridley Facility.  (Compl. ¶ 17.)

**B.  The Insurance Policies**

Taylor sought to recover damages under its insurance policies issued by the Defendants, which all had identical terms and conditions.  (*See* Decl. of Leland P. Abide ("Abide Decl."), Exs. A–C, Nov. 1, 2022, Dockets Nos. 28-1, 28-2, 28-3.)  Broadly, the Policies provide coverage for physical loss or damage to insured property during the policy period, subject to the terms, conditions, exclusions, and limitations provided.  (Abide Decl., Ex. A at 36, Ex. B at 27, Ex. C at 22.)

The Policies include several exclusions to coverage.  Of import to this present action, the Policies excluded coverage for faulty workmanship and settling:

D. **EXCLUSIONS**
1. This "policy" does not cover:
   * * *
   c. Loss of market or loss of use.
   * * *
3. This "policy" does not cover the following, but if physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s) results, then only such resulting physical loss or damage is covered by this "policy":
   a. **faulty workmanship, material, construction or design, from any cause.**
   * * *
   c. deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.
   d. **settling, cracking, shrinking, bulging, or expansion of:**
      1) **ceilings;**
      2) **floors;**
      3) **foundations, including any pedestal, pad, platform or any other property supporting machinery;**
      4) **pavements;**
      5) **roofs; or**
      6) **walls.**
      * * *
   j. loss or damage caused by any act, error or omission (whether by the Insured or by others) in:
      1) planning, zoning, surveying, siting or developing property[.]

(Abide Decl., Ex. A at 38–40, Ex. B at 28–31, Ex. C at 24–26 (emphasis added).)  The Policies included a handful of coverage extensions, which "are subject to all provisions of this 'policy.'"  (Abide Decl. Ex. A at 42; Abide Decl. Ex. B at 32–33; Abide Decl. Ex. C at 28.)  One

such coverage extension is for earth movement.  The Policies define "earth movement" as:

> 1) The term "earth movement" means by any movement of earth, whether natural or man-made, including but not limited to:
>    a) earthquake and the resultant earthquake sprinkler leverage;
>    b) volcanic action;
>    c) landslide; or
>    d) subsidence;
>
> **regardless of any other cause or event contributing concurrently or in any other sequence to the loss.**

(*Id.* (emphasis added).)

Pursuant to the Policies, Taylor's broker reported Taylor's loss from the Press Pads' failure to Defendants on May 10, 2019.  (Bartlow Decl., Ex. 6, at 124.)  The broker listed the type of loss as "Subsidence,"[2] and described the loss as being due to "Earth movement below equipment."  (*Id.*)

The Defendants then hired an engineering firm to investigate the damage at the Fridley Facility.  The engineering firm concluded that:

> [T]he root cause of floor movement can be attributed to a lack of consideration by the geotechnical and structural engineers for the Heidelberg allowable floor deflection limits. Factors contributing to the floor movement include variances in the soil compaction beneath the equipment pads and low-strength soils 40 to 60 feet beneath the building.

---

[2]    "Subsidence" is the "sinking of the ground because of underground material movement," which can be caused by the removal of water or natural resources from the ground, earthquakes, or soil compaction, among other natural and manmade causes.  *See What is Subsidence?*, National Ocean Service (Jan. 20, 2023),  https://oceanservice.noaa.gov/facts/subsidence.html (last visited April 28, 2023).

(Bartlow Decl., Ex. 8, at 167.)  Accordingly, the Defendants denied Taylor's claim, citing the Policies' exclusions for: (1) faulty design or workmanship, (2) an inherent vice or defect, (3) settling and cracking of foundations, and (4) loss caused by an error or omission in planning or development of a property.  (Bartlow Decl., Ex. 9., at 2–3.)

## II.   PROCEDURAL BACKGROUND

Taylor initiated this action in May 2022. (*See generally* Compl.)  It brought one breach of contract claim against Defendants XL Insurance America Inc.; Westport Insurance Corporation; and Liberty Mutual Fire Insurance Company for failing to pay Taylor the amounts due under the Policies.  (Compl. ¶ 23–26.)  In their answer, Defendants raised two affirmative defenses relevant to this motion.  (Am. Answer ¶¶ 38–39, Nov. 23, 2022, Docket No. 35.)  First, Defendants asserted that Taylor's claims were limited or barred by the faulty workmanship exclusion in the Policies.  (*Id.* ¶ 38.) Second, Defendants asserted that the claims were limited by the Policies' settling exclusion.  (*Id.* ¶ 39.)

Both parties have now moved for partial summary judgement on one issue: whether the Policies' earth movement provision could provide coverage for damage proximately caused by faulty workmanship and settling that caused earth movement, even though faulty workmanship and settling would otherwise be excluded from coverage.  (Pl.'s Mot. Summ. J., Nov. 1, 2022, Docket No. 25; Defs.' Mot. Summ. J., Dec. 1, 2022, Docket No. 36.)

**DISCUSSION**

I.   **STANDARD OF REVIEW**

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

II.   **ANALYSIS**

A. **Policy Interpretation Principles**

It is undisputed that Minnesota law governs this diversity case.  The Court applies "general principles of contract interpretation" in determining whether coverage exists.

*Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998).  The goal of insurance policy interpretation is to give effect to the parties' intent as reflected in the terms of the insuring contract.  *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013).  The Court must construe the terms of the policy "according to what a reasonable person in the position of the insured would have understood the words to mean rather than what the insurer intended the language to mean."  *Canadian Universal Ins. Co.*, *Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977).  Unambiguous language must be given its plain and ordinary meaning.  *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013).

The Court construes an insurance policy as a whole.  *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 692 (Minn. 1997).  Provisions must be "given a meaning in accordance with the obvious purpose of the . . . contract as a whole."  *Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979) (citation omitted).  The Court will not adopt a "construction of an insurance policy which entirely neutralizes one provision . . . if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent."  *Wyatt v. Wyatt*, 58 N.W.2d 873, 875 (Minn. 1953).  "Exclusions in a policy or endorsements are as much a part of the contract as other parts thereof and must be given the same consideration in determining what is the coverage."  *Grinnell Mut. Reinsurance Co. v. Schwieger*, 685 F.3d 697, 701 (8th Cir. 2012) (quoting *Bobich v. Oja*, 258 Minn. 287, 104 N.W.2d 19, 24–25 (Minn. 1960)).

A policy is ambiguous if its language "is susceptible to two or more reasonable interpretations." *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008). Ambiguous language is construed in favor of the insured. *Eng'g & Constr. Innovations,* 825 N.W.2d at 705. Whether an insurance policy is ambiguous is a question of law for the Court. *Id.* at 704.

Under Minnesota law, the initial burden of establishing a prima facie case of coverage rests with the insured. *Midwest Family Mut. Ins. Co.*, 831 N.W.2d at 636. If the insured establishes coverage, the burden then shifts to the insurer to prove that an exclusion applies. *Id.* Policy exclusions are "construed narrowly and strictly against the insurer." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). The insured bears the burden of proving that an exception to an exclusion which restores coverage applies. *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 314 (Minn. 1995), *overruled on other grounds by Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn. 2009).

## B. Anti-Concurrent Causation

Taylor argues that the Policies' earth movement extension contains an anti-concurrent causation clause that renders the Defendants' settling and faulty workmanship defenses void. The extension covers "earth movement," which it defines as movement of the earth "regardless of any other cause or event contributing concurrently or in any other sequence to the loss." The parties dispute whether this

language is an anti-concurrent causation clause.

To understand the potential consequence of this policy provision, the Court must first explain the concurrent causation doctrine. Minnesota has adopted the concurrent causation doctrine, which provides that an insured may only recover loss due to an excluded peril if a covered peril is "the efficient and proximate cause of the loss." *Ken Johnson Properties, LLC v. Harleysville Worcester Summary Ins. Co.*, No. 12-1582, 2013 WL 5487444, at *12 (D. Minn. Sept. 30, 2013) (citing *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 952–53 (8ᵗʰ Cir. 2012)); *see also State Bank of Bellingham v. BancInsure, Inc.*, 823 F.3d 456, 459 (8ᵗʰ Cir. 2016). But if the excluded peril is the efficient and proximate cause of the loss, the insured cannot recover. *Ken Johnson Properties*, 2013 WL 5487444, at *12. The efficient and proximate cause of a loss is the "fundamental cause, or the cause that set the chain of events into motion." *Id.* Applying the concurrent causation doctrine here, Taylor would be unable to recover for the loss if faulty workmanship or settling were the efficient and proximate cause of the earth movement. But if faulty workmanship or settling only partially contributed to the loss—but were not the proximate cause—then Taylor could still recover. Generally, proximate cause is a question of fact best left for a jury. *See Staub as Trustee of Weeks v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 621 (Minn. 2021).

Parties may contract around the concurrent causation doctrine and preclude its application with an anti-concurrent causation clause. *State Bank of Bellingham*, 823 F.3d

at 460.  Where anti-concurrent causation clauses have been recognized, "the language used is clear and specific."  *Id.* (citing *Ken Johnson Properties*, 2013 WL 5487444 at *12). This clear, specific language "evidences the parties' intent to contract around the concurrent causation doctrine."  *Ken Johnson Properties*, 2013 WL 5487444 at *12. Usually, anti-concurrent causation clauses are used to limit coverage under an insurance contract.  In those instances, "courts need not inquire into which of a covered or excluded loss was the proximate cause of the damage, but simply exclude coverage where **any portion** of the loss was caused or contributed to by an excluded loss."  *Id.* (emphasis added).

Here, however, Taylor argues that the earth movement definition includes an anti-concurrent causation clause that extends—rather than limits—the coverage of earth movement.  Taylor argues that the language "regardless of any other cause or event contributing concurrently or in any other sequence to the loss" in the definition of "earth movement" unambiguously establishes an anti-concurrent causation clause.  Thus, Taylor asserts Defendants cannot deny coverage under the faulty workmanship or settling exclusions if subsidence is found to be a cause of the loss, regardless of whether subsidence was the proximate cause.

This is an unusual case, which differs in key aspects from prior anti-concurrent causation language this Court and others have interpreted.  The parties' arguments largely fall into three categories: (1) the location of the clause, (2) the fact that it is

-11-

extending coverage, rather than limiting coverage, and (3) how it might invalidate other portions of the Policies.

Each of the parties' arguments has its merits. Different modes of contract interpretation, all bearing equal weight, repeatedly conflict when applied to this earth movement policy. After careful consideration, the Court concludes that there are multiple reasonable interpretations of the anti-concurrent causation language in the earth movement policy. The earth movement coverage extension is therefore ambiguous.

### a. Clause Location

First, the Court considers the location of this language. The relevant clause is located in the definition of earth movement, rather than the outline of coverage. By way of contrast, the Policies have other anti-concurrent causation clauses in the subsections outlining the scope of coverage. For instance, Subsection 2 of the Exclusions section reads:

> This "policy" does not cover loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not covered by this "policy", contributing concurrently or in any other sequence to the loss or damage . . . .

(Abide Decl. Ex. A at 38, Ex. B at 29, Ex. C at 24.) Likewise, the exclusions for any "act of terrorism" in Great Britain and elsewhere contain anti-concurrent causation clauses in the

actual scope of coverage subsections, not the definitions.  (See Abide Decl., Ex. A at 74, 107; Ex. B at 65, 96; Ex. C at 60, 92.)

Typically, courts that have found anti-concurrent causation clauses located them in statements defining the scope of coverage.  *E.g. Koskovich v. Am. Fam. Mut. Ins. Co.*, No. A11-2206, 2012 WL 2369001, at *3 (Minn. Ct. App. June 25, 2012); *One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2014 WL 4977331, at *1 (N.D. Ill. Oct. 6, 2014); *TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731 (8th Cir. 1997).  Neither the parties nor the Court could find any cases where there was an anti-concurrent causation clause located in the definitions section of an insurance policy, rather than the statements of coverage or exclusions.  Insurance provisions must be read in the context of the entire policy.  *Watson*, 566 N.W.2d at 692.  Reading the Policies as a whole, it appears "regardless of any other cause or event" was placed within the statement defining the scope of coverage when intended to be an anti-concurrent causation clause, and placed within the definition of a coverage term when intended to constitute the scope of what qualifies as "earth movement."  The location of this language in the definition section suggests it was not intended to be an anti-concurrent causation clause.

However, there are a few cases that suggest the location of the language is not dispositive.  The *One Place* decision, though not exactly on point with the facts of this case, is instructive.  There, the dispute dealt with whether a $2.5 million limit on what

-13-

would be paid for a loss by earth movement covered both natural and man-made causes. *One Place*, 2014 WL 4977331 at *1. The court held that because the Earth Movement Limit of Insurance contained an anti-concurrent causation clause, the policy provision unambiguously covered both man-made and natural causes. *Id.* at 18. The court stated that while it would have been preferable for the anti-concurrent causation language to be at the bottom of the earth movement definition—like it is here—to encompass both man-made and natural causes, this did not change its analysis. *Id.* Perhaps the location here too is not dispositive.

This leaves the question of why anti-concurrent causation language is placed within the definition of earth movement at all. Defendants argue this was meant to reflect previous court disputes over whether "earth movement" includes both man-made and natural causes.[3] However, this argument is without merit because the earth movement definition in fact includes coverage for "any movement of earth, **whether natural or man-made**." (Abide Decl. Ex. A at 42, Ex. B at 33; Ex. C at 28 (emphasis added).) Thus, the Policies already address the man-made versus natural cause dispute. Further, the Court fails to see, and the Defendants failed to explain, how faulty workmanship

---

[3] *See, e.g.*, *Wyatt v. Nw. Mut. Ins. Co. of Seattle*, 304 F. Supp. 781, 783–84 (D. Minn. 1969) (holding that earth movement exclusion did not apply when actions of third-party excavation on adjacent property caused "earth movement" that caused insured property damage); *Henning Nelson Constr. Co.*, 383 N.W.2d at 653–54 (concluding that earth movement exclusion applied only to widespread natural disasters and not earth movements caused by human forces operating above the ground).

would not be a "man-made" cause encompassed by the expansive earth movement definition.

In sum, though reading the Policies as a whole suggests placing this language in different locations has some meaning, the Court cannot ignore the lack of a satisfactory explanation by the drafters of the Policies as to what precisely this meaning is.

### b. Extending Coverage

Second, the Court considers that this alleged anti-concurrent causation clause extends, rather than excludes, coverage.  The District of Minnesota has previously explained that "[i]nsurance companies use anti-concurrent causation clauses . . . in order to exclude coverage when any portion of the loss was caused by an excluded event." *Ken Johnson*, 2013 WL 5487444, at *12.  "When an anti-concurrent loss provision is triggered, therefore, courts need not inquire into which of a covered or excluded loss was the proximate cause of the damage, but simply exclude coverage where any portion of the loss was caused or contributed to by an excluded loss."  *Id.*; *see also Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 425 (5th Cir. 2007) ("[T]his prefatory language denies coverage whenever an excluded peril and a covered peril combine to damage a dwelling or personal property.").  The language of such clauses is usually clear and specific that "such loss is excluded regardless of any other cause or event . . . ."  *Koskovich*, WL 2369001, at *3.

-15-

Using an anti-concurrent causation clause to extend coverage, rather than limit coverage, would be quite novel.  The Court cannot find any cases where other courts have found anti-concurrent causation clauses to extend coverage, which perhaps suggests that it was not actually intended to be an anti-concurrent causation clause at all.  But courts must give language its plain meaning.  *Midwest Family Mut. Ins. Co.*, 831 N.W.2d at 636. Regardless of where the anti-concurrent causation language is placed, and whether it extends or excludes coverage, "regardless of any other cause or event contributing concurrently or in any other sequence to the loss" is textbook anti-concurrent causation language.  *E.g., Ken Johnson*, 2013 WL 5487444, at *12 (recognizing "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" as anti-concurrent causation language).  This language has a plain meaning which the Court cannot easily dismiss.

### c.  Invalidating Other Provisions

Lastly, the Court considers how interpreting the definition of earth movement to include an anti-concurrent causation clause may invalidate other portions of the Policies. The Policies indicate that the coverage extensions, including the earth movement extension, "are subject to all provisions of this 'policy.'"  (Abide Decl. Ex. A at 42, Ex. B at 33, Ex. C at 28.)  "All provisions" would necessarily include the faulty workmanship and settling exclusions.  *See Grinnell*, 685 F.3d at 701.  It would be significant to find such an expansive grant of coverage that overrides all the Policies' exclusions stashed away in the

definition of a coverage term.  Under Minnesota law, courts should not interpret insurance policies as to "entirely neutralize" other provisions in the contract if there is another reasonable interpretation. *Wyatt*, 58 N.W.2d at 875–76 (rejecting interpretation that "presence in Any private passenger automobile" included vehicle being used by insured as a bailee, because it would entirely neutralize policy exclusion for damage to a vehicle in charge of the insured).  Finding the earth movement extension contains an anti-concurrent causation clause would not entirely neutralize the Policies' exclusions, but it would significantly hamper them.

Though the potentially neutralizing effect argument does have merit, it is not entirely uncommon for insurance policies' various exclusions and extensions to contradict and counteract each other.  In *Ken Johnson*, this Court found that a policy's "Water Endorsement specifically amends the Policy's exclusionary language regarding damage caused by water backing up or overflowing from a drain," and thus a $25,000 cap on coverage did not apply.  *Ken Johnson*, 2013 WL 5487444, at *13.  Just as an anti-concurrent causation clause in a coverage exclusion would neutralize other provisions providing coverage, a reasonable interpretation of the Policies suggests the anti-concurrent causation language in the earth movement definition was intended to neutralize other provisions excluding coverage where earth movement is a cause of an insured's loss.  Neutralizing other provisions is, of course, the very purpose of an anti-concurrent causation clause.

-17-

The parties specifically dispute whether an anti-concurrent causation clause would entirely neutralize the settling exclusion. Defendants argue that the settling exclusion would be rendered meaningless if Taylor's interpretation of the earth movement coverage extension is accepted, because settling is a type of earth movement. However, this argument is not persuasive. Courts considering separate settling and earth movement provisions have explained that "the only reasonable interpretation of [a] standalone 'settling' exclusion is that it is referring to 'settling' that is caused by something other than earth movement (*e.g.* settling due to compaction or shrinking of building materials without corresponding soil movement or compaction)." *High Street Lofts Condo. Ass'n., Inc. v. Am. Fam Mut. Ins. Co.*, 821 F. Supp. 2d 1235, 1238 n.2 (D. Colo. 2011). Because settling may occur without earth movement, an anti-concurrent causation clause would not necessarily neutralize the settling exclusion.

Again, the Court is confronted with conflicting, reasonable interpretations. Finding the earth movement extension to contain an anti-concurrent causation clause would significantly neutralize the Policies' extensions. But the anti-concurrent causation language would not "entirely neutralize" the exclusions. *Wyatt*, 58 N.W.2d at 875. It would only dispose of the Policies' exclusions where earth movement is found to be a cause of an insured's loss. Further, it is not uncommon for one provision of a policy to counteract another provision.

C. **Ambiguity**

-18-

After considering these arguments, the Court concludes that there are two reasonable interpretations of the language in the earth movement coverage extension, neither of which is clearly more persuasive than the other.   Where language in an insurance contract is subject to two reasonable interpretations, it is ambiguous and must be construed in favor of the insured.  *Prahm*, 277 N.W.2d at 390.  This rule exists because "[t]he insurer drafted this policy. It had the opportunity to clearly identify coverage and exclusions. It did not do so. Thus, it must bear the consequences."  *Safeco Ins. Co. v. Lindberg*, 380 N.W.2d 219, 2222 (Minn. Ct. App. 1986), *aff'd*, 394 N.W.2d 146 (Minn. 1986).

Here, the earth movement coverage extension is inescapably ambiguous.  There are some factors that suggest it is not an anti-concurrent causation clause, such as the location of the language in the definition section; that it extends, rather than excludes, coverage; and that it may hinder other provisions of the policies.  But the Court cannot ignore the plain meaning of the language, and this constitutes traditional anti-concurrent causation language.  Therefore, faced with two reasonable interpretations, the Court finds the earth movement coverage extension in the Policies is ambiguous and thus must construe it in favor of Taylor.

Accordingly, the Court will grant Taylor's motion for partial summary judgment. Defendants' affirmative defenses of policy exclusions for faulty workmanship and

settling/cracking are not applicable due to the express language contained in the coverage extension for earth movement.

## CONCLUSION

Whether the parties intended to create an anti-concurrent causation clause within the Policies' definition of earth movement is ambiguous. Therefore, the Court must interpret the Policies in favor of the insured, Taylor. Earth movement caused by faulty workmanship and/or settling is covered by the Policies' earth movement coverage extension, regardless of if the faulty workmanship and/or settling is the proximate cause of the loss. The Court will therefore grant Taylor's motion for partial summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment [Docket No. 25] is **GRANTED**; and

2. Defendants' Cross-Motion for Partial Summary Judgment [Docket No. 36] is **DENIED.**

DATED:  July 17, 2023
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge