UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

TAYLOR CORPORATON,

                    Plaintiff,

v.

XL INSURANCE AMERICA, INC.,
WESTPORT INSURANCE CORP., and
LIBERTY MUTUAL FIRE INSURANCE CO.,

                    Defendants.

Civil No. 22-1151 (JRT/TNL)

MEMORANDUM OPINION AND ORDER
ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

---

Amran Farah, Gina Tonn, Jeanette M. Bazis, Mark L. Johnson, and Sybil L. Dunlop, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for Plaintiff.

Daniel J. Millea and Laura W. Bartlow, **ZELLE LLP**, 500 Washington Avenue South, Suite 4000, Minneapolis, MN 55415, for Defendants.

In January 2019, Plaintiff Taylor Corporation ("Taylor")[1] discovered that concrete press pads at its leased printing facility were damaged and unusable. Taylor litigated in state court against the owner, engineer, and developer of the printing facility. Taylor also sought coverage for its losses under identical insurance policies issued by Defendants XL Insurance America, Inc., Westport Insurance Corporation, and Liberty Mutual Fire Insurance Company (collectively "Insurers"), which Insurers denied. Over the course of

---

[1] The Court refers to Taylor and its subsidiary, Curtis 1000, collectively as "Taylor" herein.

eight agreements, while the state action was proceeding, Insurers extended the time for Taylor to file this action for denial of coverage by over two years.  In February 2021, Taylor reached a settlement with the engineer of the printing facility and, two years later, it voluntarily dismissed the press pad claims against the remaining defendants.

Insurers now move for summary judgment, arguing that Taylor should not be allowed to recover because Taylor extinguished Insurers' subrogation rights in violation of the insurance policies and because Taylor should be equitably estopped from recovering against Insurers.  However, the policies' subrogation provisions require Insurers to make a payment to invoke Taylor's obligation to protect their subrogation rights, and Insurers are unable to meet all elements of equitable estoppel.  The Court will therefore deny Insurers' motion for summary judgment and grant summary judgment sua sponte in favor of Taylor on equitable estoppel.

## BACKGROUND

### I. FACTS

The parties agree that there are no genuine issues of material fact.  The Court has already recounted the underlying facts, which are incorporated by reference and briefly summarized below.  *See Taylor Corp. v. XL Ins. Am., Inc.*, No. 22-1151, 2023 WL 4595708, at *1–3 (D. Minn. July 18, 2023).

Taylor contracted with Industrial Equities – River Road, LLC (the "owner") to lease a "build-to-suit" printing facility in Fridley, Minnesota (the "Fridley Facility").  (Decl. of Gina M. Tonn ("Tonn Decl.") ¶ 2, Ex. 1 at 2, Aug. 9, 2023, Docket No. 74.)  The Fridley

Facility was built with specially reinforced, isolated concrete slabs ("Press Pads") meant to support Taylor's Heidelberg printing press equipment.  (*Id.* ¶¶ 22–24; Decl. of Laura W. Bartlow ("Bartlow Decl.") ¶ 5, Ex. A ("State Complaint") ¶¶ 37–39, July 5, 2023, Docket No. 59.)  The owner hired Innovative Structural Solutions, P.A. (the "engineer") to design the printing facility, including the Press Pads, to support Taylor's printing presses. (Bartlow Decl. ¶ 7, Ex. C ("State Third Party Complaint") ¶¶ 5–6.)

After unsuccessfully attempting to install a Heidelberg press on one of the Press Pads, Taylor discovered that the Press Pads were unlevel, which would prevent the presses from functioning properly and likely cause substantial damage.  (Decl. of Janine R. Matzke ("Matzke Decl.") ¶¶ 2–3, Aug. 9, 2023, Docket No. 76.)  A geo-technical engineering firm concluded that the soil beneath the Fridley Facility was "not suitable for support of the printing press foundations."  (Decl. of Bill Conrad ("Conrad Decl.") ¶ 8, Ex. 3 at 10, July 5, 2023, Docket No. 58.)  Consequently, Taylor could not install its Heidelberg presses at the Fridley Facility, which caused increased costs and delays in its operations. (Matzke Decl. ¶¶ 4–5.)

Taylor sought to recover damages caused by the Press Pad failure under identical insurance policies (the "Policies") issued by Insurers.  (Conrad Decl. ¶ 5, Ex. 1; Bartlow Decl. ¶¶ 9–11, Exs. E–G.)  Insurers denied Taylor's claim in October 2019.  (Conrad Decl. ¶ 10, Ex. 5 at 2–3.)  Taylor requested that Insurers reconsider, but Insurers did not.  (Tonn Decl. ¶ 2, Ex. 9 at 2; Conrad Decl. ¶ 11, Ex. 6 at 2.)

In June 2019, the owner of the Fridley Facility initiated an action in Minnesota state court against Taylor for Taylor's withholding of rent. (*See* State Complaint ¶¶ 92–101.) Taylor filed counterclaims for breach of the lease and negligence, alleging that the owner failed to deliver press pads in good operation condition and was negligent in supervising the construction of the Fridley Facility. (Bartlow Decl. ¶ 6, Ex. B at 32–33.) Taylor also filed a third-party negligence complaint against the engineer of the Fridley Facility and the facility's developer, Industrial Equities, LLP (The "developer"). (*See* State Third Party Complaint ¶¶ 53–64, 66–75.)

The Policies' subrogation provision, which outlines Insurers' right of recovery against third parties in the event of a loss, states in relevant part:

> *Section V.* **LOSS ADJUSTMENT AND SETTLEMENT**
>
> 11. ***SUBROGATION***
>
>> In the event of any payment made under this "policy":
>>
>> a.   The Company will be subrogated to all of the Insured's rights of recovery against any person or organization; and
>>
>> b.   The Insured will execute and deliver instruments and papers and do whatever is necessary to secure such rights.
>>
>> The Company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this "policy."

> The Insured will do nothing after a loss to prejudice the subrogation rights of the Company.
>
> . . .

(Bartlow Decl. ¶¶ 9–11, Ex. E at 79, Ex. F at 70, Ex. G at 66.)

While the state action was ongoing, Taylor repeatedly requested that Insurers extend the Policies' 12-month suit limitations provisions to preserve Taylor's ability to later challenge Insurers' denial of coverage. (*See* Bartlow Decl. ¶¶ 9–11, Ex. E at 79, Ex. F at 70–71, Ex. G at 66.) Insurers granted the extensions for various reasons, including for reasons related to the progress of litigation in the state court action. For example, Taylor communicated that it "remain[ed] hopeful that [it] will prevail in [the state action]" and needed an extension because "the legal process has slowed down." (Conrad Decl. ¶ 15, Ex. 12 at 2; *see also id.* ¶¶ 17, 19–20, Exs. 14, 16–17 (similar requests).)

Insurers' internal communications considered that if the state court litigation continued into 2021 and Insurers refused to grant another extension, "it is very likely that [Taylor] will file suit for this claim to preserve any possible legal activities." (Conrad Decl. ¶ 15, Ex. 12 at 2.) Furthermore, Insurers contemplated that "If [Insurers] do grant an extension and [Taylor] prevails against the building owner, [Insurers'] file is closed. If [Insurers] do grant an extension and [Taylor] does not prevail against the building owner, that is the question." (*Id.*)

Insurers reviewed Taylor's insurance coverage claim and kept tabs on the state court litigation between 2020 and 2022. (Decl. of Daniel Millea ¶ 4, Ex. 1 at 3–16, Docket

No. 80.) Insurers' claim notes indicate that Taylor anticipated being successful in the state action and that its prospect for recovery against the state action defendants looked good. (*See id.*) Ultimately, Insurers granted Taylor's requests to extend the suit limitations provisions eight times. (Conrad Decl. ¶¶ 12–13, 16, 18–19, 21, Exs. 7–10, 13, 15–16, 18.) In effect, Insurers extended the original 12-month suit limitations provisions for an additional 27 months—to June 1, 2022. (*See* Conrad Decl. ¶ 21, Ex. 18 at 2.)

In February 2021, Taylor reached a settlement with the engineer and filed a copy of the settlement agreement with the state court. (Bartlow Decl. ¶ 12, Ex. H.) The settlement represented roughly twenty-five percent of Taylor's total damages, (Conrad Decl. ¶ 18, Ex. 15 at 3.), and eighty percent of the cost of removing and replacing the Press Pads, as indicated at the hearing on this motion. Taylor mentioned the settlement agreement to Insurers in April 2021. (*See id.*)

Insurers granted three of the eight extensions after they were made aware of Taylor's settlement with the designer of the Fridley Facility. (Conrad Decl. ¶¶ 18–19, 21, Exs. 15–16, 18.) Despite their extensions of the suit limitations provision, Insurers were adamant that their coverage position remained the same and refused to pay. (*See, e.g.*, Conrad Decl. ¶ 13, 16, Exs. 10, 13; Tonn Decl. ¶ 2, Ex. 22 at 2.) In May 2022, Taylor initiated this action against Insurers for their denial of coverage. (*See* Compl. ¶¶ 24–26, May 2, 2022, Docket No. 1.)

Trial for the state action was scheduled for Spring of 2023. On March 27, 2023, Taylor filed a pretrial brief in which it stated its intent not to try the claims related to the Press Pads against the remaining state action defendants because it was not cost-effective. (Tonn Decl. ¶ 2, Ex. 29 at 7; *id.* Ex. 31 at 4.) Accordingly, the state court dismissed the Press Pad claims with prejudice. (Bartlow Decl. ¶ 14, Ex. J at 3.) The state action then proceeded to a jury trial on the remaining claims, which was attended by Insurers' counsel. (Decl. of Heidi L. Karels ¶¶ 2–3, Aug. 9, 2023, Docket No. 77.) Insurers' counsel did not object to Taylor's dismissal of the Press Pad claims at the trial or otherwise. (*Id.* ¶ 3.)

## II.   PROCEDURAL HISTORY

Taylor filed this action in May 2022. (*See* Compl.) The Court granted Taylor's first motion for summary judgment that earth movement caused in part by faulty workmanship and/or settling was covered by the Policies' earth movement coverage extension. *Taylor Corp.*, 2023 WL 4595708, at *7–8. While that motion was pending, Insurers filed the instant motion for summary judgment. (Defs.' Mot. Summ. J., July 5, 2023, Docket No. 55.)

## DISCUSSION

## I.   STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and

a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

Federal courts may grant summary judgment sua sponte to a nonmoving party when the losing party is given sufficient advance notice and an adequate opportunity to submit evidence in opposition.  Fed. R. Civ. P. 56(f)(1); *Chrysler Credit Corp. v. Cathey*, 977 F.2d 447, 449 (8th Cir. 1992).  Granting summary judgment under these circumstances accomplishes the primary objective of Rule 56: expeditious disposition of cases.  *Interco Inc. v. Nat'l Sur. Corp.*, 900 F.2d 1264, 1269 (8th Cir. 1990).  The requirements of Rule 56(f) are met when the losing party moves for summary judgment on the relevant issue because that party "obviously expect[s] the district court to make a final ruling" and agrees to resolution of the issue "in summary fashion."  *Johnson v. Bismarck Pub. Sch.*

*Dist.*, 949 F.2d 1000, 1005 (8th Cir. 1991); *see also Lester v. Wildwood Fin. Grp., Ltd.*, 205 F.3d 1346 (8th Cir. 2000). By raising arguments in support of its own motion for summary judgment, the losing party has had an opportunity to develop the record on that issue. *Johnson*, 949 F.2d at 1005; *Barkley, Inc. v. Gabriel Brothers, Inc.*, 829 F.3d 1030, 1041 (8th Cir. 2016).

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Insurers argue Taylor is not entitled to recover under the Policies for the alleged Press Pad losses for two reasons. First, because Taylor extinguished Insurers' subrogation rights in violation of the Policies. Second, because Taylor should be equitably estopped from recovering against Insurers for the Press Pad claims because it voluntarily relinquished those claims in state court. Neither argument is availing.

### A. Taylor's Obligation to Protect Insurers' Subrogation Rights

In the insurance context, subrogation allows the insurer to stand in the shoes of the insured to legally pursue a third party that caused an insurance loss to the insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Agility Fuel Sols. LLC*, 618 F. Supp. 3d 812, 819 (D. Minn. 2022) (quoting *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 77 (Minn. 1997)). In other words, "when an insurer has paid a loss, the insurer is subrogated in a corresponding amount to the insured's right of action against any third party whose wrongful conduct caused the loss." *Melrose Gates, LLC v. Chor Moua*, 875 N.W.2d 814, 818 (Minn. 2016) (internal quotation marks and citation omitted). Subrogation is premised on the principle "that no one should be enriched by another's loss." *Medica*,

566 N.W.2d at 76–77 (internal quotation omitted).  Ordinarily, policies require that an insured do nothing after a loss to impair the insurer's subrogation rights, unless the insurer has erroneously denied coverage.  *See* 22 Minn. Prac., Ins. L. & Prac. § 3:11 (2023-2024 ed.); *Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 86 (Minn. 2004).

In this case, it is undisputed that Insurers do not have actionable subrogation rights because they did not pay under the Policies.  *See State Farm Mut. Auto. Ins. Co. v. Galloway*, 373 N.W.2d 301, 305 (Minn. 1985); *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 5–6 (Minn. 2012).  Instead, the dispute depends on whether Taylor had an obligation to protect Insurers' subrogation rights irrespective of whether Insurers had invoked those rights.[2]

Whether Taylor had an ongoing contractual obligation to protect Insurers' subrogation rights under the Policies is a matter of contract interpretation.  The Court applies "general principles of contract interpretation," giving effect to the parties' intent as reflected in the terms of the insuring contract.  *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998); *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013).  The Court construes the terms of the policy "according to what a reasonable person in the position of the insured would have understood the words to mean rather than what the insurer intended the language to

---

[2] At the hearing on this motion, Insurers clarified that they do not challenge Taylor's decision to reach a settlement with the engineer of the Fridley Facility, just its voluntary relinquishment of the Press Pad claims.

mean." *Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977).

Unambiguous language must be given its plain and ordinary meaning, *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013), and ambiguous language is construed in favor of the insured, *Eng'g & Constr. Innovations*, 825 N.W.2d at 705. Whether an insurance policy is ambiguous is a question of law. *Id.* at 704. A policy is ambiguous if its language "is susceptible to two or more reasonable interpretations." *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008).

The Policies' subrogation provisions unambiguously provide that Taylor's obligation to protect Insurers' subrogation rights depends on whether Insurers have made a payment under the Policies. Though the payment condition is structurally separated from Taylor's obligation, it precedes the obligation as the first clause of the entire provision. A reasonable person would understand that the payment condition applies to the entire subrogation provision, including Taylor's obligation. Furthermore, Minnesota law is clear that an insurer must pay benefits to the insured to invoke its subrogation rights. *See, e.g.*, *Galloway*, 373 N.W.2d at 305; *RAM*, 820 N.W.2d at 5–6. Thus, absent clear policy language to the contrary, the Court concludes that Taylor only

has an obligation to protect Insurers' subrogation rights if Insurers make a payment, which they did not do here.[3]

## B. Equitable Estoppel

In Minnesota, a claim for equitable estoppel must satisfy three elements: "(1) that promises or inducements were made; (2) that [Insurers] reasonably relied upon the promises; and, (3) that [Insurers] will be harmed if estoppel is not applied." *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990); *N. States Power St. Paul Credit Union v. CUMIS Ins. Soc., Inc.*, No. 13-0385, 2013 WL 4052675, at *6 (D. Minn. Aug. 9, 2013). The goal of equitable estoppel is "to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights." *N. Petrochemical Co. v. U. S. Fire Ins. Co.*, 277 N.W.2d 408, 410 (Minn. 1979). In Minnesota, equitable claims are generally questions of law for the Court to decide when the evidence is conclusive. *See Melrose Gates*, 875 N.W.2d at 819 ("Generally, litigants have no right to a jury trial on the merits of equitable claims, and traditionally the judge serves as the trier of fact for such claims."); *Grant Cnty. State Bank v. Schultz*, 228 N.W. 150, 152 (Minn. 1929).

To begin, Taylor never made a promise or inducement to Insurers as required. *See Hydra-Mac*, 450 N.W.2d at 919. Evidence of fraudulent intent is not required; instead, it is sufficient if the party knows the truth, and then makes representations or inducements

---

[3] Though the issue of erroneous denial of coverage is outstanding, the Court also notes that Minnesota law would also relieve Taylor of any subrogation obligation if it prevails on that ground. *See Schwickert*, 680 N.W.2d at 86.

intending or reasonably anticipating that the other party will rely and act on them as true.[4] *See Stevens v. Ludlum*, 48 N.W. 771, 771 (Minn. 1891); *EEP Workers' Compensation Fund v. Fun & Sun, Inc.*, 794 N.W.2d 126, 135 (Minn. Ct. App. 2011). Insurers assert that, in requesting that Insurers toll the Policies' 12-month suit limitations provisions, Taylor affirmatively advised that it would try the Press Pad claims in the state court action. The record unambiguously demonstrates that some of Taylor's requests for extension were related to the progress of the state court action. But the record does not show that Taylor represented that it would **try** all its claims in the state court action. At most, the record indicates that Taylor communicated that it was diligently litigating and that it was hopeful it would prevail on its claims; Taylor never represented that it intended to try all its claims.

Regardless of whether Insurers have established the first element, the Court finds the second element is not met. Insurers must establish that their reliance on Taylor's promises or inducements was reasonable. *Hydra-Mac*, 450 N.W.2d at 919. This element involves two questions: (1) whether Insurers relied on Taylor's representations; and (2) whether that reliance was reasonable. *Anderson v. Minn. Ins. Guar. Ass'n*, 534 N.W.2d 706, 709 (Minn. 1995). Insurers argue that, acting in reliance on Taylor's assurances, they

---

[4] Though Taylor accepted the benefits of Insurers' extensions to the Policies' suit limitations provisions, the Court is not persuaded that Taylor's voluntary waiver of its Press Pad claims against the state action defendants constitutes the sort of shifting positions that warrants estoppel. *Contra Karnitz v. Wells Fargo Bank, N.A.*, 572 F.3d 572, 574–75 (8th Cir. 2009) (applying Minnesota law); *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 736–38 (8th Cir. 1987) (applying Missouri law).

agreed to toll the suit limitations provision eight times—in effect extending the 12-months period by an additional 27 months. To the extent Insurers relied on Taylor's representations when deciding to extend the suit limitations provision, a belief that a litigant would go to trial at all costs is unreasonable. Parties often settle; other times, as here, they waive claims when the cost of litigation outweighs the potential benefit.

Lastly, Insurers have failed to establish that they will be harmed if estoppel is not applied. *See Hydra–Mac*, 450 N.W.2d at 919. Insurers maintain that they will be harmed because Taylor eliminated their ability to recover any payments for the Press Pad losses against the state action defendants. It is unclear, though, how the purported harm (loss of subrogation rights) is even remotely related to the extended statutes of limitations. The trigger for Insurers to be able to invoke their subrogation rights was claim payment, which in no way relates to the timing of Taylor's initiation of this action. Indeed, Insurers had nearly one year between initiation of this action and settlement of the state claims. That they did not pay and intervene in the state suit during that time to preserve their subrogation rights shows that they were not harmed by the extended deadline. The statute of limitations and preservation of subrogation rights are entirely separate transactions, and Insurers cannot bootstrap the latter to prove harm from the former.

Insurers want to have their cake and eat it too. So long as Taylor was on the hook, Insurers were happy to let Taylor bear the brunt of litigation and settle for only eighty percent of the cost of removing and replacing the Press Pads. But with the possibility that

Insurers may instead have to pay out, they protest that same eighty percent is insufficient. With their opportunity for subrogation coverage gone, Insurers argue they should not be forced to pay at all. Insurers took a risk by denying coverage while the state action proceeded, and they must stand by that risk as this action proceeds. Of course, Insurers may still prevail on the wrongful denial of coverage issue and not have to pay a cent of the Press Pad costs. But the Court will not hedge for them by applying a post hoc bailout disguised as equitable estoppel.

Accordingly, the Court will deny Insurers' motion for summary judgment and, because both parties expect the Court to rule on the equitable estoppel issue in summary fashion and both parties have had ample opportunity to brief the issue, the Court will grant summary judgment sua sponte for Taylor on equitable estoppel.

## CONCLUSION

Insurers have failed to establish that they are entitled to summary judgment. The Policies' subrogation provisions are clear that Taylor was only obliged to protect Insurers' subrogation rights after Insurers pay under the Policies, which Insurers did not do. Thus, Taylor did not extinguish Insurers' subrogation rights in violation of the Policies when it voluntarily waived the Press Pad claims against the state action defendants. Furthermore, Insurers are unable to establish all three elements of equitable estoppel. The Court will therefore deny Insurers' motion for summary judgment and instead grant summary judgment sua sponte for Taylor on the equitable estoppel issue.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 55] is **DENIED in part** and **GRANTED in part to Plaintiff** as described herein.  Defendants' claims for equitable estoppel are dismissed with prejudice.


DATED:  February 6, 2024
at Minneapolis, Minnesota.

                                        JOHN R. TUNHEIM
                                United States District Judge